**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **THIEN CONG HO,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| | § | |
| **MARY DE ANDA-YBARRA,** Field Office | § | |
| Director of Enforcement and Removal | § | |
| Operations, El Paso Field Office, | § | |
| Immigration and Customs Enforcement; | § | |
| **WARDEN OF ERO EL PASO CAMP** | § | |
| **EAST MONTANA**; | § | |
| **TODD M. LYONS,** *in his official capacity* | § | **EP-26-CV-00487-DCG** |
| *as* Acting Director, Immigration and | § | |
| Customs Enforcement, U.S. Department of | § | |
| Homeland Security; | § | |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary, U.S. Department of | § | |
| Homeland Security; and | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| *Respondents*. | § | |

## ORDER GRANTING PETITION

Petitioner Thien Cong Ho challenges his immigration detention while the government

facilitates his removal from the United States.[1]  Among other things, Petitioner argues that

uncertainty regarding when (or whether) the government will remove him from the country

---

[1] *See generally* Pet., ECF No. 1.

requires his release.[2]  Respondents, on the other hand, insist that Petitioner's continued detention is lawful.[3]

For the following reasons, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Respondents to release Petitioner from custody.

## I.   INTRODUCTION

Petitioner is a Vietnamese citizen who entered the United States as a refugee in or around 1988.[4]  Sometime thereafter, Petitioner was convicted of second-degree forgery, first-degree theft, and identity theft.[5]  Those offenses rendered Petitioner removable from the United States.[6] The government therefore took Petitioner into custody, placed him in removal proceedings, and obtained a final order for his removal to Vietnam on September 21, 2011.[7]

Petitioner's removal, however, "did not appear reasonably foreseeable at that time."[8]  So, on December 29, 2011, the government released Petitioner under an order of supervision ("OSUP").[9]  Years later, on January 21, 2026, the government revoked Petitioner's OSUP and

---

[2] *See id*. at 13–15.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *See generally* Resp'ts' Corrected Resp., ECF No. 4.

[4] Pet. at 7; Resp'ts' Corrected Resp. at 2.

[5] Resp'ts' Corrected Resp. at 2.

[6] *Id*.

[7] *Id.*

[8] *Id.*

[9] *Id.*

detained him "to effectuate removal."[10]  As of April 29, 2026, however, the government was still waiting for Vietnam to issue a travel document and "d[id] not have an anticipated timeline for removal."[11]

Petitioner now seeks a writ of habeas corpus, arguing that these circumstances require his release.[12]  The Court agrees.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 allows alien detainees to challenge their detention as unlawful by filing a petition for a writ of habeas corpus.[13]  To obtain their release, aliens must show—by a preponderance of the evidence[14]—that they are "in custody in violation of the Constitution or laws or treaties of the United States."[15]

---

[10] *See id.*

[11] Resp'ts' Status Update, ECF No. 8; *see also* Tello Decl., ECF No. 8-1.

[12] Although Petitioner argues that multiple legal theories require his release, Pet. at 13–15, this Order focuses only on whether his continued detention exceeds the government's authority under 8 U.S.C. § 1231(a)(6).  *See* Pet. at 13–14 (alleging "violations of 8 U.S.C. § 1231").  Because the Court will grant the Petition on that basis, *see generally infra*, it need not address Petitioner's other claims, *see* Pet. at 13–15.  *See Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises.").

[13] 28 U.S.C. § 2241(c); *see also Zadvydas*, 533 U.S. at 699 (citing 28 U.S.C. § 2241(c)(3)).

[14] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[15] 28 U.S.C. § 2241(c).

### III.    DISCUSSION

#### A.    Governing authorities

##### 1.    Section 1231(a)

Section 1231(a) governs detention of aliens who are ordered removed from the country.[16] Once a removal order becomes final, Section 1231(a)(1) provides the government ninety days to secure removal.  This is known as the "removal period," during which detention is mandatory under the statute's plain text.[17]

As this case illustrates, though, not all aliens are removed during the removal period. Section 1231(a)(6) authorizes the government to detain certain aliens—including Petitioner here—beyond the removal period.[18]  Notably, however, Section 1231(a)(6) doesn't expressly limit how long the government may detain the specified classes of aliens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, ***may be detained beyond the removal period*** and, if released, shall be subject to . . . terms of supervision . . . .[19]

##### 2.    *Zadvydas v. Davis*

That doesn't mean that the government's Section 1231(a)(6) detention authority is unlimited.  In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6)

---

[16] *Zadvydas*, 533 U.S. at 682.

[17] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 (2001) ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[18] *See infra* note 19 and accompanying text.

[19] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

authorizes the government to detain an alien indefinitely.[20]  There, the government continued detaining two aliens past the removal period based on their criminal histories.[21]  The government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[22]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[23] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[24]  The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[25]

Having determined that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority.  The government's interpretation would have authorized indefinite detention[26]—which, according to the Supreme Court, would raise a "serious constitutional problem."[27]  As the Supreme Court had previously

---

[20] *Zadvydas*, 533 U.S. 678.

[21] *See id*. at 684–86.

[22] *See id.*

[23] *See id*. at 682.

[24] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[25] *Zadvydas*, 533 U.S. at 697 ("[I]f Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms.").

[26] *Id.* at 692.

[27] *Id*. at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction

explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[28]  Applied to Section 1231(a)(6):

(1)    the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2)    if it's unlikely that the government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so

(3)    interpreting Section 1231(a)(6) to authorize the government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[29]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[30]  As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[31]  "After th[at] 6-month period, 'if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the alien.'"[32]

---

of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[28] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[29] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[30] *Id.* at 689.

[31] *Id.* at 701.

[32] *Jennings*, 583 U.S. at 296 (citing *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

### 3.     8 C.F.R. § 241.13

After *Zadvydas*, the INS incorporated the Supreme Court's holding into 8 C.F.R. § 241.13.  That regulation—which now governs ICE's operations—codifies *Zadvydas*'s holding that the government may detain an alien past the removal period only if there's a "significant likelihood that the alien will be removed in the reasonably foreseeable future."[33]

Notably, 8 C.F.R. § 241.13 also places limits on *re*-detention.  Again incorporating *Zadvydas*'s foreseeability criteria, § 241.13(i)(2) instructs that the government may "revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[34]

### B.     Petitioner's continued detention isn't presumptively reasonable

In evaluating whether Section 1231(a)(6) authorizes Petitioner's continued detention, the Court must first assess whether his detention is presumptively reasonable—that is, whether *Zadvydas*'s six-month presumptively reasonable detention period has expired.  As this Court previously concluded, that period runs continuously from the date on which an alien's removal

---

[33] *See generally* 8 C.F.R. § 241.13.

[34] *Id.* § 241.13(i)(2); *see also Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." (citing 8 C.F.R. § 241.13(i)(2))).

order becomes final—irrespective of whether an alien spends all or some of that six-month period in detention.[35]

Here, Petitioner's removal order became final on September 21, 2011,[36] meaning that his detention under Section 1231(a)(6) was presumptively reasonable through March 21, 2012. Because that six-month period has long since passed, Petitioner's continued detention isn't presumptively reasonable.

### C. Petitioner's removal is not significantly likely in the reasonably foreseeable future

Having determined that Petitioner's detention isn't presumptively reasonable, the Court must next consider whether Petitioner's removal is foreseeable. Under *Zadvydas*, aliens typically bear the initial burden of providing good reason to believe that there ***isn't*** a significant likelihood of removal in the reasonably foreseeable future.[37] Some courts, however, have concluded that where—as here—the government re-detains an alien after revoking their release, 8 C.F.R. § 241.13(i)(2) applies and requires ***Respondents*** to show that such a likelihood of removal ***does*** exist.[38]

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention. Even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that

---

[35] *See Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822, at *4–8 (W.D. Tex. Apr. 21, 2026).

[36] Resp'ts' Corrected Resp. at 2.

[37] *See supra* note 32 and accompanying text.

[38] *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

is less favorable to Petitioner) applies, Petitioner's continued detention is unreasonable and no longer authorized under Section 1231(a)(6).[39]

### 1. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future

Under *Zadvydas*'s burden-shifting framework, Petitioner would first need to provide good reason to believe that there isn't a significant likelihood of removal in the reasonably foreseeable future.[40] While "'[g]ood reason' is not an onerous standard,"[41] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[42]

Petitioner has met his burden. Although Petitioner's removal order became final in September 2011 (nearly fifteen years ago),[43] the government still hasn't obtained a travel document to remove him to Vietnam.[44] And despite having over a decade to identify a third country that will accept Petitioner, the government hasn't attempted to find one.[45] Petitioner has therefore established good reason to doubt that his removal is significantly likely in the reasonably foreseeable future.[46]

---

[39] *See, e.g.*, *Khoury*, 2026 WL 1179822, at *8–9 (determining that it wasn't necessary to "resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention" because Section 1231(a) didn't authorize detention "even if *Zadvydas*'s burden-shifting framework . . . applied").

[40] *Zadvydas*, 533 U.S. at 701.

[41] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[42] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[43] *See* Pet. at 1–2; *see also* Resp'ts' Corrected Resp. at 5.

[44] *See* Pet. at 8; Pet'r's Reply, ECF No. 5, at 5.

[45] *See* Pet. at 8; Resp'ts' Status Update.

[46] *See, e.g.*, *Khoury*, 2026 WL 1179822, at *10 (determining that a petitioner carried his burden where he showed that "the removal process is in virtually the same place as it was" decades prior); *Mogos*, 2026 WL 475079, at *5 (finding that a petitioner's removal wasn't reasonably foreseeable where

## 2.   Respondents have failed to rebut Petitioner's showing

Respondents, by contrast, haven't offered anything to suggest that Petitioner's removal is more foreseeable now than it's been at any point since he was ordered removed. As Respondents admit, they are still "waiting for approval on a pending travel document request from Vietnam," and they are "not considering any other countries for removal at this time."[47] Resultingly, the government "does not have an anticipated timeline to effectuate Petitioner's removal."[48]

At this stage, it's uncertain whether Vietnam will accept Petitioner's removal at all—let alone in the reasonably foreseeable future. Section 1231(a) doesn't authorize Respondents to detain Petitioner indefinitely while they pursue a removal that may never happen.[49] Under these circumstances, Petitioner's continued detention is unreasonable and no longer authorized by statute.[50]

---

there was "no stated progress on such removal during the [p]etitioner's continued detention"); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

[47] *See* Resp'ts' Status Update; *see also* Resp'ts' Corrected Resp. at 2 (indicating that the government has been in "the process to obtain a travel document from Vietnam" since at least March 3, 2026).

[48] Tello Decl. at 1–2; *see also* Resp'ts' Status Update.

[49] *See Zadvydas*, 533 U.S. at 689.

[50] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."); *see also, e.g.*, *Trejo*, 807 F. Supp. 3d at 707 (determining that the government failed to meet its burden where no country had accepted the alien's removal); *Khoury*, 2026 WL 1179822, at *10–11 (same).

D.    Scope of Relief

Because Petitioner's continued detention is no longer authorized, the Court will order his release.[51] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[52] The Court therefore directs Respondents to release Petitioner under a form of supervised release that accounts for his history of compliance (or noncompliance) with his prior OSUP(s).[53]

Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act (the "EAJA").[54] The EAJA does not authorize attorneys' fees or costs in habeas proceedings like this one.[55] Seeing no other appropriate basis to grant this relief, the Court denies Petitioner's request for attorney's fees and costs.[56]

---

[51] *See Zadvydas*, 533 U.S. at 699–700 (contemplating an alien's release where detention is no longer authorized); *see also supra* note 32 and accompanying text.

[52] *Zadvydas*, 533 U.S. at 700.

[53] *Id.*; *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts have "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775)).

[54] Pet. at 16.

[55] *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

[56] *Oliver v. Arnold*, 3 F.4th 152, 163 (5th Cir. 2021) ("We, of course, follow the 'American Rule' under which '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" (citing cases)).

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Petitioner Thien Cong Ho has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[57]

The Court therefore **GRANTS** Petitioner Thien Cong Ho's Verified Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART**.

The Court **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION on or before Friday, May 8, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on Monday, May 11, 2026**.

The Court **FURTHER DENIES** Petitioner's request for attorney's fees and costs.

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there appears to be nothing further for the Court to do in this case.  The Court therefore **CLOSES** the above-captioned case.

**So ORDERED and SIGNED this 5th day of May 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[57] *See supra* note 15 and accompanying text.